UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Randall Lee Conrad,<br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Warden Drew, Officer Smith,<br><br><br>　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A No. 5:12-cv-01288-RBH-KDW<br><br><br><br>Report and Recommendation |

Plaintiff Randall Lee Conrad is a federal prisoner in the Gilmer Federal Corrections Institution in Glennville, West Virginia. Plaintiff filed this action pro se seeking compensatory damages and other relief pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for violations of his constitutional rights by Defendants. ECF No. 1. This matter is before the court on the Motion to Dismiss, or in the alternative, Summary Judgment filed by Defendants on February 6, 2013.[1] ECF No. 44. As Plaintiff is proceeding pro se, the court advised him in a *Roseboro*[2] order regarding the importance of dispositive motions and the need for him to file an adequate response. ECF No. 45. Plaintiff filed an opposition to Defendants' motion on March 12, 2013. ECF No. 47. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Accordingly, the undersigned enters this Report and Recommendation for the court's review.

---

[1] Because the Court has considered matters outside of the pleadings, the undersigned is considering the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I.      Relevant Factual Background

Plaintiff filed his Complaint on May 17, 2012 seeking damages and injunctive relief for alleged constitutional violations that occurred while he was an inmate at the Federal Correctional Institution in Bennettsville, South Carolina ("FCI-Bennettsville").  ECF No.1.  Specifically, Plaintiff complains that, beginning April 1, 2012, Defendant Officer Smith brought his personal cooking spray into FCI-Bennettsville and had inmates prepare his breakfast.  ECF No. 1-2 at 3. Plaintiff also contends that he and other inmates also cooked their own breakfast using Defendant Smith's cooking spray.  *Id.*  Plaintiff alleges that he "started getting sick" around April 11, 2012, and had sores on his face and in his mouth, headaches, dizziness, and unexplained bruising on his body.  *Id.*  Plaintiff avers that he went to Medical and "they ran test and could not find the source of [his] illness thru routine blood work."  *Id.*  Plaintiff continued to eat food cooked with Defendant Smith's cooking spray and Plaintiff contends that he "got sicker and sicker."  *Id.*  Plaintiff concluded that Defendant Smith's cooking spray was making him sick and he asked Defendant Smith if he could read the ingredients off the cooking spray bottle so he could determine if he "was allergic to any active ingredients in the spray."  *Id.*  Plaintiff contends that his request was refused and that he was removed from his job in the kitchen the next day. *Id.*  Plaintiff avers that he sent Defendant Smith an Inmate Request asking for the "ingredients off the can" and in response Defendant Smith sent inmates and another officer to threaten him. *Id.*  Plaintiff argues that he went to Assistant Warden Schults and "gave him an inmate Request about this matter," but he did not receive a response.  *Id.*     Plaintiff contends he wrote a BP-8[3]

---

[3] The Federal Bureau of Prisons ("BOP") has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10, *et seq.* An inmate may first seek to informally resolve his complaint by filing Form BP-8, and if the matter cannot be resolved informally, the inmate must file a formal written "Administrative Remedy Request" (Form BP–9) within twenty calendar days following the date on which the basis for the complaint occurred. 28 C.F.R. §§ 542.13, 542.14(a). If the

and the response he received stated that "we take this very serious, and there will be no response." *Id.* at 3-4. Plaintiff argues that he also submitted a BP-9 and he did not receive a response. *Id.* at 4. Plaintiff alleges that he then went to Defendant Warden Drew about not getting a response to his BP-9 and he was "called to medical [on May 21, 2012] about [his] BP-9 and asked how to resolve the problem." *Id.* at 4. Plaintiff contends he told Medical that he needed them to get "the active ingredients off the spray can" and have an "outside doctor run test to see if [he was] allergic to any of those ingredients and if there is long term or just short term damages to [his] health." *Id.* Plaintiff alleges that "instead of giving [him] medical treatment and finding the source of his illness" that he was put "on the 'Pack out List'" on that same day to be transferred. *Id.* Plaintiff was transferred to FCI Gilmer on May 23, 2012. *Id.* Plaintiff seeks injunctive relief; and monetary damages in the amount of $5,000,000 from each Defendant. *Id.* at 5.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the

---

inmate is dissatisfied with the response, he may appeal the decision to the Regional Director within twenty calendar days of the date of the Warden's response by filing Form BP–10. 28 C.F.R. § 542.15. Finally, the inmate may appeal this decision to the General Counsel within thirty calendar days of the Regional Director's response by filing Form BP–11. *Id.*

3

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.   477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. Anderson, 477 U.S. at 251.

   III.   Analysis

     A.  Applicable Law

   Plaintiff is bringing suit against the employees of a federal prison, as such, his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). Because a *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983, caselaw involving § 1983 claims is applicable in *Bivens* actions, and

4

vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-20, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994); *Bolin v. Story*, 225 F.3d 1234, 1241-1242 (11th Cir. 2000); *Campbell v. Civil Air Patrol*, 131 F. Supp. 2d 1303, 1310, n.8 (M.D. Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

    B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones*, 549 U.S. at

204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. at 94–95. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved. *Woodford*, 548 U.S. at 95. This is the reason for the BOP requirement that inmates institute their grievances within 20 days of the date of incident giving rise to the complaint. *See* 28 C.F.R. § 542.14(a). As the Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford*, 548 U.S. at 95.

Defendants argue that Plaintiff has failed to exhaust "his remedies available under the formal Administrative Remedy procedure established by the BOP concerning the allegations set forth in his complaint" and therefore they are entitled to summary judgment. ECF No. 44 at 6. In support of this contention Defendants offer an affidavit from Tami Cassaro who is employed as a Supervisory Attorney for the United States Department of Justice, Federal BOP. ECF No. 44-5 at 1. Attorney Cassaro attests that BOP's records show that FCI-Bennettsville received a Request for Administrative Remedy filed by Plaintiff on May 15, 2012 in which Plaintiff claims

6

that Defendant Smith was bringing his personal cooking spray into the institution and having inmates prepare him breakfast, and that Plaintiff got sick when he ate food prepared with the cooking spray. *Id.* at 3. In his Request for Administrative Remedy Plaintiff asked that the "can of cooking spray be taken to medical so that medical or an outside doctor can test whether he is allergic to an ingredient in the cooking spray." *Id.* Attorney Cassaro avers that Defendant Drew responded to Plaintiff's Request on May 23, 2012, and informed Plaintiff that "his allegations of misconduct will be reviewed for appropriate disposition in accordance with Policy." *Id.* at 4. Defendant Drew also informed Plaintiff that "[a] review of his medical records reveals that [he was] not seen for any complaint related to this case," and that when called to "Health Services to discuss any issues [he had] regarding this case on May 21, 2012" Plaintiff denied any issues. ECF No. 44-5 at 14. Defendant Drew concluded that "based on the above, it is clear that your situation has been appropriately handled by Health Services." *Id.* Attorney Cassaro attests that Plaintiff "left FCI Bennettsville in route to FCI Gilmer, which is located in the Mid-Atlantic Region" and arrived at FCI Gilmer on June 5, 2012. ECF No. 44-5 at 4. Attorney Cassaro attests that Plaintiff appealed Defendant Drew's Response to his Request for Administrative Remedy to the Southeast Regional Director on or about July 17, 2012, however his appeal was rejected "because he submitted his appeal to the wrong office." *Id.* Plaintiff was informed that he "must submit his appeal to his designated Regional Office." *Id.* Attorney Cassaro avers that on or about August 24, 2012 the Mid-Atlantic Regional Office ("MRO") Director received Plaintiff's appeal of Defendant Drew's response. *Id.* Plaintiff's appeal was rejected because it was untimely and Plaintiff did not submit the proper number of continuation copies of his remedy appeal. *Id.* Plaintiff was told "he could only submit one continuation page attached to BP-10 as part of his argument and that he must provide a staff memorandum to verify he was not

at fault for being late." *Id.*  Plaintiff was given ten days to resubmit his appeal. *Id.* Attorney Cassaro attests that BOP records show that Plaintiff did not "attempt to re-submit his appeal" to the MRO Director and that Plaintiff did not appeal the MRO Director's "early rejection to the Central Office." *Id.* at 5. Attorney Cassaro attests that Plaintiff did not exhaust his administrative remedies in regard to the issues set forth in his complaint. *Id.*

Plaintiff alleges that if he did not exhaust his administrative remedies it was because the administrative remedies were unavailable.  ECF No. 47 at 4.  Plaintiff argues that he filed a BP-9 on May 15, 2012 which was not responded to until July 6, 2012 when it was left in his cell. *Id.* Plaintiff contends that the response to his BP-9 was not timely and Defendants did not "send [him] a notice of time extension that is required by Law, when exceeding their own 20 day time limit for responding," and argues that an inmate cannot be faulted for failing to follow rules and regulations when Defendants "fail[] to do better." *Id.*    Plaintiff argues he mailed his appeal to the regional office in Georgia, not knowing the appeal needed to be sent to the Mid-Atlantic Office ("MAO"). *Id.* at 5.  Plaintiff contends that he resubmitted his appeal to the MAO when it was rejected by the regional office in Georgia, and that his appeal was rejected by the MAO "for 5 reasons that were all false." *Id.*  Plaintiff contends he filed a response to the MAO five days later and never received a response.  *Id.*   Plaintiff contends that because the MAO did not respond to his grievance, this rendered any further remedy unavailable. *Id.*  Plaintiff argues he "tried to use the Administrative Remedy process, but was denied by false claims, false timeliness, their timeliness, and lack of response." *Id.* at 6.

The undersigned finds that Plaintiff's contentions concerning his attempts to exhaust his administrative remedies are insufficient to defeat Defendants' documented claim that Plaintiff did not complete the BOP's administrative remedy process. Although Plaintiff contends that he

resubmitted his appeal to the MAO and did not receive a response, he presents no documentation to support this contention. *See* ECF No. 47. Because Plaintiff has not set forth any evidence demonstrating that he has properly exhausted his administrative remedies by filing the required appeal, his claims are not ripe for judicial review and the undersigned recommends that they be dismissed for failure to exhaust administrative remedies.

III.    Conclusion

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 44, be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

March 28, 2013                                          Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**